## CITY OF BOSTON vs. JESSE SHAW.

*A* by-law of the city of Boston, requiring that every person, who enters his particular drain into a common sewer of the city, shall be held to pay to the city such sum as is his just proportion of the expense of making such common sewer, having reference always to the last valuation of such person's estate, in the assessors' books, previous to the expenditure, is void for inequality and unreasonableness.

The city cannot maintain a count on a *quantum meruit* against one who enters his particular drain into such common sewer.

ASSUMPSIT to recover the amount of two assessments laid on the defendant for entering his private drains into a common sewer . made and owned by the plaintiffs.    There was also a count on a *quantum meruit*.

It was agreed by the parties, that in 1832 the city of Boston, at its own expense, made a common sewer from a certain point in Pinckney Street, west of the defendant's land, into Charles Street, and through Charles Street into tide waters :    That in 1834, on the petition of the defendant and others, the city, at its own expense, continued the Pinckney Street drain easterly, to and beyond the defendant's land :    That the defendant had built a house on his land in Pinckney Street, and between February 13th and October 25th, 1834, entered the particular drains therefrom into said Pinckney Street sewer, in . that part of it which was laid in 1834 ; and on said 25th of October, sold and conveyed his said house and land to Mary Foster:    That on the said 13th of February, an ordinance of the city was passed, relating to drains and common sewers, of which the first two sections are as follows, viz.

1. All common sewers which shall hereafter be considered necessary by the mayor and aldermen, in any street or highway in which there is at present no common sewer, shall be made and laid, and, together with all common sewers owned by the city, shall be for ever kept in repair at the expense of the city, &c.

2. Every person, who has entered or shall hereafter enter his or her particular drain into any common sewer owned by the city, or shall be or has been otherwise benefited thereby, shall be held to pay the city such sum of money as is their just pro-

portion of the expense of making said common sewer, having reference always to the last valuation in the assessors' books, previous to the expenditure ; and in case of any subsequent repair upon such common sewer, the amount of such repair shall be assessed on those whose particular drains connect therewith, or who are otherwise benefited thereby, in such amount as may be just and reasonable as aforesaid.

On the 6th of June, 1837, an ordinance of the city was passed, establishing the office of superintendent of common sewers, and the 4th section of said ordinance provides, that the said superintendent shall keep an accurate account of the expense of constructing each common sewer, and assess the expense upon the persons and estates deriving benefit therefrom ; and, after having completed the assessment, he shall report the same to the mayor and aldermen, and if sanctioned by them, he shall enter the same in books to be kept for that purpose, and shall forthwith make out bills for the said assessments against all persons whose drains have entered the common sewer, or who have been benefited thereby, and deliver the same to the city treas urer for collection, &c. Section 5th provides that the said superintendent shall proceed forthwith to make all assessments for common sewers heretofore constructed by the city, the expenses of which have not already been assessed and collected, in the same manner as he is by this ordinance directed to proceed in relation to those which may hereafter be constructed. An assessment of the expenses of making and laying both the common sewers above mentioned was made by the superintendent of common sewers, which was reported to, and sanctioned by, the mayor and aldermen of said city, at a meeting held on the 5th day of February, 1838, by the following vote. " The superintendent of common sewers made report of the costs of constructing, and the assessments upon the several individuals interested in, the following common sewers. Southack Street, from Green Street to Southack's Court ; Charles Street and in the rear of Charles Street and Pinckney. Read and accepted, and thereupon ordered, that the said superintendent make out the several bills and lodge them with the treasurer for collection."

The said bills, including the defendant's, were accordingly made out and lodged with the treasurer; and a demand was made upon the defendant for the amount of his bill, to be paid within sixty days from the date of such notice, to wit, the 8th day of February, 1838 ; but the same has not been paid.

There were, at the time of said assessment, and still are, sundry vacant lots in said Pinckney Street, and in that part of Charles Street through which the sewer extends ; and both those built upon, (including the defendant's,) and those then vacant, formed a part of the aggregate valuation of estates upon which said assessment was made, according to their respective values by the then last valuation of the assessors ; but the assessments on the vacant lots were not actually made at that time, but were reserved to be made and collected when the lots should be built upon, and entries made therefrom into the common sewer. Some of these vacant lots have since been built upon ; and upon these there have been assessed and charged, not the sums originally reserved in the aggregate valuation aforesaid, but such sums as they would have been charged if the houses had been built when the assessment was made ; and such has been the practice, under the ordinance, in streets where there are vacant lots.

No demand was made, or notice given to the defendant, of any assessment for said sewer, except as aforesaid ; nor was any notice given him of the day of the meeting of said mayor and aldermen at which the said assessment was to be sanctioned by them ; but the said assessment was so sanctioned by them at their regular weekly meeting, which is held on Monday of every week.    Public notice of the intention to construct said common sewer in Charles Street was given by an advertisement published in the Boston Daily Advertiser of June 27, 1832, that the mayor and aldermen would, the Monday then next, at 4 o'clock P. M., at their room, City Hall, take into consideration the expediency of constructing common sewers in several places, and assessing the expense thereof, according to law, upon those whose estates should be benefited thereby, viz. George, *Charles*, Belknap, &c. Streets, and that all persons objecting to the same would then and there be heard if they should see cause.    Similar public

notice of the intention to construct said common sewer in Pinckney Street, was given by an advertisement published in the Boston Daily Advertiser, of April 17th, 1834.

The assessment laid on the defendant as aforesaid, is $ 49·20, to wit the sum of $ 34·20 for Pinckney Street, and of $ 15 for Charles Street. He has constantly resisted the claim of the city therefor, and has never agreed to the same, unless his assent is to be presumed from the facts in the case.

The aforementioned, and all other ordinances of the city in the premises, and the special statutes respecting the city of Boston, are to be referred to as in the case.

If on the foregoing facts, and by force of any law of this Commonwealth applicable to the case, and every valid ordinance of the said city, the court shall be of opinion, that said Shaw is liable for a proportion of said expenses, judgment is to be rendered for the plaintiffs for the said sum of $ 49·20, or such part thereof as the court shall adjudge ; otherwise the plaintiffs shall become nonsuit, and judgment shall be rendered for the defendant for his costs.

A copy of the assessment made in February, 1838, as sanctioned by the mayor and aldermen, is in the case to be referred to.

*J. Pickering* (City Solicitor), for the plaintiffs. The power of the city to make the ordinances, as to sewers, rests *first* on its authority as a municipal corporation, and *secondly* on its authority to make regulations for the public health. The city government has the same authority, as to the matters confided to them, which the legislature had ; and the court will pass upon the city ordinances, as they would upon the statutes of the legislature. *Commonwealth* v. *Worcester*, 3 Pick. 462. *Commonwealth* v. *Gay*, 5 Pick. 44. *Vandine's case*, 6 Pick. 187. *Nightingale's case*, 11 Pick. 168.

The ordinance now in question stands on the same ground as that in *Goddard's case*, 16 Pick. 504, which required him to remove the snow from the sidewalks adjoining his house and lots, and that in *Paxson* v. *Sweet*, 1 Green, 196, requiring the owners of lots fronting on a street to make a brick way in front of those lots.

VOL. I.  12

The notice in the newspapers, that the city government would consider the expediency of constructing sewers and assessing the expenses, was notice that assessments would be, or might be, laid. And after the assessment was laid, the defendant might have applied for an abatement. The court will not open the assessment. If it be wrongly made, the defendant is, perhaps, entitled to a *certiorari. Bow* v. *Smith,* 9 Mod. 94. *Soady* v. *Wilson,* 3 Adolph. & Ellis, 248. *Dore* v. *Gray,* 2 T. R. 358.

It may be objected, that as all the persons benefited were not assessed, the assessment is void. This objection is answered by *Inglee* v. *Bosworth,* 5 Pick. 498, and *Dillingham* v. *Snow,* 5 Mass. 547.

If the assessment cannot be sustained, yet the plaintiffs are entitled to recover upon the count on a *quantum meruit.*

*J. T. Austin,* (Attorney General,) and *Dexter,* for the defendant. The city government has no authority to tax the defendant for contribution towards the expenses of the sewers. It has only the authority which selectmen formerly had ; but that did not extend to public sewers. Anc. Chart. 389. It has authority, by special statutes, as a board of health, but has, by the city charter, no more power to make by-laws than towns have.

No by-law of a town or city can change the liabilities of citizens in a case where the general statutes of the Commonwealth provide for the whole subject, as *St.* of 1796, c. 47, does, in this instance. *Mayor, &c. of New York* v. *Ordrenan,* 12 Johns. 122. The ordinance is also repugnant to that statute, and therefore void.

The ordinance is unreasonable and void, being unequal in its operation. If the assessment is to conform to the last valuation, the owner of vacant lots will pay, if they are built upon after a sewer is made, half as much as his neighbor, for the same benefit. And if a small house is succeeded by a large one on the same site, the owner will pay too little. If the city government is *not* bound by the last valuation, it has an arbitrary and unreasonable power, warranted by no law. No appeal can be taken though one was given in all previous cases.

The ordinance is also bad for want of a provision for notice before an assessment is made.

The proceedings were illegal, and also contrary to the ordinance, on the face of them ; and the court will not carry them into effect. The defendant was assessed, on the valuation of 1837, for drains made in 1832 and 1834. The count on a *quantum meruit* cannot be sustained. There is no implied contract, when private individuals use public privileges, to pay therefor.

*Pickering*, in reply, cited *Rogers* v. *Jones*, 1 Wend. 261, to show that the city has authority to make by-laws, though the legislature has legislated on the same subject.

PUTNAM, J. By the fifteenth section of the charter of the city, (*St.* 1821, *c.* 110,) all the powers, which were by law vested in the town of Boston, are vested in the mayor and aldermen, and common council of the city, and they have power to make all such needful and salutary by-laws as towns may make, and annex penalties, not exceeding $20, for the breach of the same, which shall be in force from and after the time therein limited, without the sanction or confirmation of any court, or other authority whatsoever ; provided that such by-laws shall not be repugnant to the constitution and laws of this Commonwealth. And the city council shall have power to lay and assess taxes. The power given to towns to make by-laws is in the Rev. Sts. *c.* 15, § 13, for the managing of the prudential affairs of the town ; which, however, are to be approved by the court of common pleas. These by-laws, if reasonable, have as full force, as if they were made by the legislature ; and it is for the court to decide whether they are reasonable, or not. *Commonwealth* v. *Worcester*, 3 Pick. 473. If unreasonable, they are void. *Vandine's case*, 6 Pick. 191.

Anciently the law provided that a main drain or common sewer might be laid by an individual, at his own expense, and that those who should enter their particular drains into such main drain, should be obliged to pay, according to the judgment of the selectmen or a major part of them ; saving to the aggrieved party a right to appeal to the court of sessions. *Sts* 8 Ann, *c.* 2, and 3 Geo. III. Anc. Chart. 389. 652. And

substantially the same provisions were contained in *St.* 1796, *c.* 47.

The mayor and aldermen derive their authority from the city charter ; and by the ordinance of the city, passed February 13th, 1834, it is provided that the city shall thereafter construct and own the common sewers, and assess upon those individuals, who enter their particular drains into the same, their proportion of the expense of making the common sewer, having reference always to the last valuation in the assessors' books previous to the expenditure.

It appears that the city laid the common sewer from a place in Pinckney Street, to the northward of the defendant's land, through Charles Street, in 1834, and that, at the request of the defendant and others, the city continued the same to the eastward of the defendant's land.   The defendant built a house on his land between February and October, 1834, and entered his particular drain into the Pinckney Street common sewer, in that part which was laid in 1834, and on the 25th of October, 1834, he conveyed the house and land to Mrs. Foster.   The assessment upon the defendant was made according to the vote of the 5th of February, 1838.   At the time of this assessment, there were vacant lots in both streets through which the common sewer extends.   No assessments, however, were made on those lots, but they were reserved to be made when the lots should be built upon, and drains therefrom should be entered into the common sewer.   And when built upon, the assessments have been, as in other like cases, such as would have been charged, if they had been built upon when the common sewer was made.

The amount, which the owner of the land should pay towards the cost of the main drain, should be settled at the time of its construction ; and we think the intent was to prescribe a certain rule, by which the amount of the construction should be ascertained, rather than to have it left to an indefinite and final discretion of the city officers.   The last valuation in the assessors' books, previous to the expenditure, was the basis upon which the assessment should be laid.   Provision was then made for the payment or reimbursement to the city for the whole cost of the

common sewer. But the assessment, in the case at bar, has not been made according to the valuation of the defendant's land next before the expenditure, which was in 1834, but upon such sum or capital as the mayor and aldermen supposed the land would have been then assessed, if there had been a house upon the land at that time. The assessment was not made until 1838. We think, that such an assessment is not according to the true intent of the ordinance, even if the ordinance itself were valid.

But is the ordinance reasonable and just? We are constrained to answer this question in the negative.

It is better, without doubt, that the city should do the work, and that the mayor and aldermen should judge when and where a common sewer should be made. If it were left to the individual abutters to build the part against their respective lots, he expense might not fall equally; for some might be obliged to carry the sewer through ledges and rocks, at great cost, while others, at a trifling expense, would go through a loose soil. It is better for the city to construct and to own it. And it must be considered as reasonable, that the charge should fall upon the lots abutting, which would have the privilege of entering particular drains from the respective lots into the main drain or common sewer. The right and privilege would become appurtenant to the several lots, and their value would thereby be increased probably quite as much as the amount which should be required to be paid towards the general expenditure. Thus no loss would fall upon the owners of the land. It might happen that some of the owners of vacant lots would not at present want to have a common sewer built, while other owners, having houses on their lots, would consider such an accomodation to be absolutely necessary. Let the mayor and aldermen then judge when and where the public convenience requires such main drains. There is as much reason to subject the owners of the land abutting to contribution to this expenditure, as there is to oblige them to pave the foot-ways in front of their grounds, or to keep the same in repair, when the city shall pave the streets adjoining. It should be a charge upon the land, just as is the requisition on the owners of land abutting on streets to clear away the snow

12 *

at their own expense, which has been determined to be a reasonable provision. *Goddard's case*, 16 Pick. 504. It is a charge upon real estate thus situated, and requisite for the comfort and convenience of all the citizens. But how shall it be apportioned ? Shall the owner of the lot next to the outlet be, in any event, held to contribute more than the owner of the lot 600 feet above, if the former lot should have a house upon 't, and the latter should be vacant ? We think not.

Suppose A. owns a lot next to the outlet at Charles Street, of the value of $ 1,000, which, with the house upon it, is valued at $ 10,000, and that B. has a lot of the same dimensions, 600 feet from Charles Street, valued at $ 1,000. By the ordinance, the contribution should be made according to the valuation of these estates in the books of the assessors. The owner of one lot would be held to pay ten times as much as the other. The apportionment should be made upon the value of the land independently of the buildings, and should be settled in the time of the transaction, so that the city would neither gain nor lose by the work, and the rights and liabilities of the owners of the land be definitely ascertained.

It is not for the court to prescribe the mode by which the amount of the contribution should be ascertained ; but we are bound to say that this, which has been provided, is unequal and unreasonable, and therefore void.

We are also of opinion, that the plaintiffs cannot recover on the *indebitatus* count. There is nothing in the case from which the law implies a promise by the defendant to pay the plaintiffs for the benefit he may have received from their common sewer. His obligation to pay is imposed by statute or city ordinance, and not by the common law. All our statutes on this subject, from 8 Ann, *c.* 2, to the Rev. Sts. *c.* 27, inclusive, and the city ordinances also, regard contribution towards the making and repairing of common sewers as a matter *in invitum ;* and provison is made for a tax or assessment, by public authority, upon the persons benefited. In the absence of an express promise, a legal assessment is, therefore, the only ground of legal liability to such contribution. When a new power and also the means

of executing it are given by statute, that power can be executed in no other way. *Andover & Medford Turnpike* v. *Gould*, 6 Mass. 44. 4 Bur. 2319, 2323. 7 T. R. 627. *Bangor House Proprietary* v. *Hinckley*, 3 Fairf. 388. *Moncrief* v. *Ely*, 19 Wend. 405.

*Plaintiffs nonsuit.*